## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| RICHARD ROEDOCKER,<br><br>        Plaintiff,<br><br>vs.<br><br>FARSTAD OIL, INC.,<br><br>        Defendant. | CV 16-29-BLG-SPW-CSO<br><br><br>**FINDINGS AND<br>RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE** |

Plaintiff Richard Roedocker ("Roedocker") brings this wrongful discharge action against Defendant Farstad Oil, Inc. ("Farstad").

Now pending is Farstad's motion (*ECF No. 3*)[1] to dismiss or transfer venue. This Court recommends that the motion be granted in part and denied in part, as set forth below.

## I.   ALLEGATIONS OF COMPLAINT

The following facts are taken from the Complaint and, for the purpose of ruling on the motion to dismiss, are assumed to be true.

Farstad provides multi-state supply and distribution of refined petroleum products, including gasoline, distillates, propane and

---

[1] "*ECF No.*" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.* References to page numbers are to those assigned by ECF.

lubricating oils.  *ECF No. 7* at 2.  Roedocker began working for Farstad in 1991.  His employment as Farstad's Billings branch manager was terminated on May 21, 2015.  The termination was based on a crude text message sent by Roedocker to another employee on January 12, 2015, during a work teleconference.

Roedocker alleges that crude language was common in the workplace and that he is unaware of anyone being reprimanded or counseled for using crude language.  *Id.* at 4, ¶ 19.  The January 12, 2015 text message was sent in response to a crude text message from another employee, Roger Pelzer ("Pelzer"), and Pelzer responded to the message with another crude text message.  Pelzer was not terminated for using crude language.  *Id.* at 5, ¶ 38.

On May 11, 2015, Roedocker was called into a meeting with Natalie Mussell ("Mussell"), and his supervisor, Merv Carter ("Carter"). *Id.*  They asked Roedocker whether he had sent a derogatory text message during the January 15, 2015 meeting about a female branch manager.  Roedocker initially responded that he would need to review the text message exchange. *Id.*  He later sent an email to Mussell and Carter admitting that he sent a derogatory message to Pelzer regarding

the female branch manager.

Carter called Roedocker into the Billings office on May 21, 2015. *Id.* at 5. Mussell and Carter informed Roedocker that he was terminated immediately. Roedocker alleges that Farstad claimed he was terminated for poor communications.

Roedocker alleges that his termination was pretextual because he reported to Carter "concerns relating, but not limited to, the comingling of gasoline to branded locations and the sale of diesel used during the winter months (i.e. #1 diesel and P40 diesel) to customers when these customers thought they were getting #2 diesel fuel which is typically used during the warmer months." *Id.* He alleges that he raised this issue during a managers meeting on March 28, 2015. *Id.* at 6. He alleges that these comments angered Carter.

## II. PARTIES' ARGUMENTS

Farstad argues that the Court should dismiss Roedocker's Complaint for failure to properly allege any causes of action for which relief can be granted. *ECF No. 4* at 5. Farstad argues that Roedocker failed to state a claim because: (1) he only vaguely alleges he expressed concerns about comingling of gasoline, but not what he said, how it was

connected to his discharge, or that it was actually public policy violation; (2) he was terminated for good cause, because as a management-level employee, not calling co-workers derogatory names has a logical relationship to the needs of the business; (3) he has not specified a single personnel policy that was violated.

Farstad argues that if the Complaint is not dismissed, the case should be transferred to North Dakota. It argues that transfer would be appropriate based on the following factors: (1) Roedocker's offer of employment and other documents were negotiated and executed in North Dakota; (2) all relevant witnesses are in North Dakota, with the exception of Roedocker; (3) Roedocker had regular contacts with North Dakota; (4) the action has only been pending for a short time in Montana; (5) North Dakota courts regularly apply Montana law; (6) North Dakota courts are less congested than Montana courts; (7) North Dakota has a local interest in protecting North Dakota employers and employees from inappropriate and derogatory text messages; and (8) Roedocker's choice of forum should be accorded little weight.

In response, Roedocker argues that: (1) there are sufficient facts to infer that his termination was for reporting a violation of public policy,

pursuant to MCA § 82–15–110, because he reported unlawful practices to management, his boss was angered, and he was terminated shortly after the report; (2) he was not terminated for good cause because other employees used derogatory and crude language as well, but were not terminated, and this discrepancy demonstrates he was discharged on a pretext; (3) he was terminated in violation of Farstad's personnel policies because two other managers engaged in conduct that violated the code of conduct but were not terminated, and that without discovery, Roedocker could not cite a specific provision of Farstad's written policies.

Next, Roedocker argues that Farstad's motion presented evidence outside of the pleadings, and the motion should be converted to a summary judgment motion if the Court considers the extra information in ruling on the motion to dismiss. *Id.* at 11.

Finally, Roedocker argues that Farstad has not met its burden to demonstrate that the forum should be changed. *Id.* at 12. He argues that: (1) his choice of forum warrants great deference, especially because he lives and works in Billings, and Farstad's actions damaged him in Billings; (2) electronic discovery renders document location

irrelevant to transfer considerations, and is at best a neutral consideration; (3) the location of witnesses in North Dakota does not support transfer because Farstad has not made the necessary showing that witnesses will not attend proceedings in Montana, or that there is a severe inconvenience, but only provides vague references to high travel costs; (4) Farstad has significant contacts with Montana, and gladly accepts the benefits of conducting business in Montana, and his contacts with North Dakota are not significant enough to justify a transfer; (5) the length of time the action has been pending is a neutral consideration; (6) Montana's courts are less congested than North Dakota's courts; (7) Montana is the most familiar with Montana law, and has a local interest in protecting Montana employees from conduct that violates Montana law, especially based on the unique statutory construction of the Montana's Wrongful Discharge from Employment Ace ("WDEA"), MCA §§ 39-2-901, et seq.

## III.  LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory. *Zixiang Li v. Kerry*, 710 F.3d

995, 999 (9th Cir. 2013). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). In *Levitt*, the Ninth Circuit summarized the test:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.* (citations omitted).

## IV. DISCUSSION

### A. WDEA

The WDEA provides:

(1) A discharge is wrongful only if:

> (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
>
> (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
>
> (c) the employer violated the express provisions of its own written personnel policy.

(2)(a) During a probationary period of employment, the employment may be terminated at the will of either the employer or the employee on notice to the other for any reason or for no reason.

MCA § 39–2–904. Unless otherwise provided, the probationary period is 6 months from the date of hire. *Id.*

Roedocker alleges Farstad violated three provisions of the WDEA. He alleges that his discharge was: (1) not for good cause, and Farstad lacked reasonable job-related grounds, under MCA § 39–2–904(1)(b); (2) in violation of the express provisions of Farstad's policies and procedures, under MCA § 39–2–904(1)(c); and (3) done based on his

reporting violations of public policy, under MCA § 39–2–904(1)(a). *ECF No. 7* at 6. The Court will discuss the motion to dismiss based on each alleged violation.

### 1. <u>GOOD CAUSE</u>

The WDEA defines good cause as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reasons." MCA § 39–2–903(5). A legitimate business reason is one that is "neither false, whimsical, arbitrary or capricious, and . . . must have some logical relationship to the needs of the business." *Baumgart v. State of Montana*, 332 P.3d 225, 231 (Mont. 2014) (quoting *Sullivan v. Continental Const. of Montana, LLC*, 299 P.3d 832, 835 (Mont. 2013)). This showing may be met by demonstrating that the given reason for an employee's discharge "is not the honest reason for the discharge, but rather a pretext for some other illegitimate reason." *Marcy v. Delta Airlines*, 166 F.3d 1279, 1284 (9th Cir. 1999); *see also Mysse v. Martens*, 926 P.2d 765, 770 (Mont. 1996). Additionally, the Montana Supreme Court has clarified that:

> An employer's legitimate right to exercise discretion over whom it will employ must be balanced, however, against the

employee's equally legitimate right to secure employment. The balance should favor an employee who presents evidence, and not mere speculation or denial, upon which a jury could determine that the reasons given for his termination were false, arbitrary or capricious, and unrelated to the needs of the business.

*Johnson v. Costco Wholesale*, 152 P.3d 727, 733 (Mont. 2007) (quoting *Kestell v. Heritage Health Care Corp.*, 858 P.2d 3, 8 (Mont. 1993)).

Here, Roedocker has alleged that he and another employee, Pelzer, exchanged derogatory text messages about a branch manager during a meeting. *ECF No. 7* at 3. He alleges that: (1) crude language was common in the workplace; (2) Pelzer and others also made derogatory comments and were not terminated; and (3) the text message was private and not shared with anyone other than Pelzer. *ECF No. 7* at 3–7. The Court must construe the facts alleged by Roedocker as true in determining a motion to dismiss. Roedocker does admit he sent a derogatory message about a branch manager during a work meeting, on the cell phone provided to him by Farstad. But the Court finds that Roedocker has pled enough facts to suggest that Farstad may have dealt with Roedocker's conduct in an arbitrary manner because others were not punished in the same manner for similar conduct. He specifically alleges that other employees, including

Pelzer, also used crude language but were not punished or terminated. He additionally alleges that he was terminated for reporting public policy violations, and that the crude email was only used as a pretext. These facts sufficiently allege that Roedocker may have been terminated without good cause because his termination was arbitrary and the given reason may have been a pretext for reporting public policy violations.

Accordingly, the Court finds that Roedocker has adequately alleged a claim under MCA § 39–2–904(1)(b).

## 2. <u>FARSTAD'S PERSONNEL POLICIES</u>

The WDEA provides that a discharge is wrongful if the employer violated the express provisions of its own written personnel policy. MCA § 39–2–904(1)(c).

Here, Roedocker alleges that Farstad terminated him in violation of "the express provisions of its policies and procedures," but does not allege a single fact regarding which policy or how it was violated. An allegation in a complaint is not entitled to the presumption of truth it if simply recites the elements of a cause of action. *Levitt*, 765 F.3d at 1135. Roedocker fails to allege any underlying facts regarding which

personnel policy Farstad violated, or how it was violated. Instead, he recites the language of the statute to support his claim. Accordingly, the Court finds that Roedocker has failed to allege a claim under MCA § 39–2–904(1)(c), for a violation of the Farstad's written personnel policy.

### 3.  <u>REPORTING VIOLATIONS OF PUBLIC POLICY</u>

"The WDEA's retaliatory discharge provision, § 39–2–904(1)(a), MCA, . . . exists to protect the State's interest in enforcing State policies 'concerning the public health, safety, or welfare established by constitutional provision, statute, or administrative rule.' " *Fenno v. Mountain West Bank*, 192 P.3d 224, 230 (Mont. 2008) (quoting MCA §39–2–903(7)). "[T]he WDEA protect[s] employees who take steps in their employment to promote the enforcement of laws and regulations." *Id.* The WDEA defines public policy as "a policy in effect at the time of the discharge concerning the public health, safety, or welfare established by constitutional provision, statute, or administrative rule. MCA § 39–2–903(7).

Roedocker alleges that the reason provided for his termination was a pretext, and that he was actually terminated because he reported a violation of public policy to his supervisor. *ECF No. 7* at 5–6. He

alleges that he reported concerns relating to the comingling of gasoline to branded locations and the sale of diesel in violation of MCA § 82–15–110(7). He further alleges that this report occurred during a managers meeting on March 28, 2015. *Id.* at 6.

Farstad argues that saying "something about a violation of public policy to someone at Farstad" is not sufficient to state a claim under MCA § 39–2–904(1)(a). *ECF No. 10* at 3 (emphasis omitted). But nothing in the statute, nor in any binding decision, requires an employee to make a report to anyone other than the employee's employer. *Fenno*, 192 P.3d at 228 (citing MCA § 39–2–904(1)(a)) (in determining whether a federal whistleblower statute preempted the WDEA, the Court highlighted that "the WDEA does not identify to whom the employee must report violations in order to qualify for protection."); *see also Russell v. Daiichi-Sankyo, Inc.*, 2012 WL 1793226, at *13 (D. Mont. May 15, 2012). Roedocker describes: (1) the nature of the public policy violation; (2) the date he voiced his concerns; (3) the venue in which he voiced his concerns; and (4) the statute he alleges the Farstad violated. *ECF No. 7* at 5–6. From this, the Court finds that Roedocker has adequately alleged a claim under MCA § 39–2–904(1)(a).

**B.** **VENUE**

The Court has the discretion, under 28 U.S.C. § 1404(a), to transfer a civil action to a different venue. The governing statute provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). A decision to grant a motion to transfer venue must be based on an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Fran., Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The Court must weigh multiple factors to determine whether transfer is appropriate in a particular case. *Id.* Factors frequently considered include:

> 1. the plaintiff's choice of forum,
> 2. the location where the relevant agreements were negotiated and executed,
> 3. the convenience of witnesses,
> 4. the ability of the two forums to compel non-party witnesses to testify,
> 5. the respective parties' relative contacts with the forums,
> 6. the state that is most familiar with the governing law,
> 7. the relative congestion in the two forums,
> 8. the length of time action has already been pending in the

transferor forum,
9. ease of access to sources of proof, and
10. whether there is a "local interest" in either of the forums.

*RD Rod, LLC v. Montana Classic Cars, LLC*, 2012 WL 6632185, at *3

(D. Mont. Dec. 19, 2012)*; see also Jones*, 211 F.3d at 498–499. The

relevant public policy of the forum state is also a significant factor in

this analysis. *Id.*

The moving party bears the burden of establishing that venue

should be changed. *Jones*, 211 F.3d at 499. "The defendant must make

a strong showing of inconvenience to warrant upsetting the plaintiff's

choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805

F.2d 834, 843 (9th Cir. 1986). When a discretionary venue transfer

would only shift the inconvenience from defendant to plaintiff, the

motion to transfer should be denied." *Anderson v. Thompson*, 634

F.Supp. 1201, 1204 (D. Mont. 1986) (citation omitted).

As a threshold to considering a motion under 28 U.S.C. § 1404(a),

the Court must first determine whether the action could have been

brought in the District of North Dakota. If so, then it must consider the

relevant factors.

Here, the action could have been brought in the District of North

Dakota.  A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]"  28 U.S.C. § 1391.  Farstad is the sole defendant, and alleges it is a resident of North Dakota.  Farstad is incorporated in, and has its principle place of business in, North Dakota.  *ECF No. 5* at 1.  Accordingly, because the action could have been filed in North Dakota, the Court will consider each relevant factor in turn.

## 1.    <u>Plaintiff's Choice of Forum</u>

There exists a strong presumption in favor of a plaintiff's choice of forum.  *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1974); *Anderson*, 634 F.Supp. at 1204 (citing *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968)).

Roedocker chose Montana as his choice of forum.  This factor weighs against transferring the action.  Farstad argues this factor should be accorded little weight because the operative facts that give rise to Roedocker's claims occurred in North Dakota.  But the Court disagrees.  Roedocker was terminated in Montana, from his employment in Montana, and he sent the text message at issue from

Montana.  *See ECF No. 7*.  Accordingly, this factor weighs heavily against transferring the action.

### 2. Location Where Relevant Agreements were Negotiated and Executed

Farstad argues that this factor favors transfer because Roedocker's employment offer and other documents were negotiated and executed in North Dakota.  *ECF No. 4* at 14.  But the Court is persuaded by Roedocker's argument that advances in technology, and electronic discovery, render this factor much less important than other factors.  Transporting documents no longer creates the large burden it once did.  *David v. Alphin*, 2007 WL 39400, at *3 (N.D. Cal. Jan. 4, 2007).  This is especially true here, where the parties argue that most of the relevant documents were sent back and forth between Montana and North Dakota.  *See ECF No. 4* at 14; *ECF No. 9* at 12.  Accordingly, the Court finds that this factor neither favors nor disfavors transfer.

### 3. Convenience of Witnesses

The "mere fact a party wishes to call witnesses who reside in a transferee district is not sufficient to warrant transfer, unless the party makes a sufficient showing that the witnesses will not attend, or will be severely inconvenienced if litigation proceeds in the transferor forum."

*Anderson*, 632 F.Supp. at 1207.

Here, Farstad does not make a sufficient showing to demonstrate that any witnesses will not be available for trial in Montana. Farstad also fails to make a sufficient showing that the witnesses would be severely inconvenienced. Instead, Farstad generally argues that individuals named in the Complaint would likely need to be called as witnesses and would have to "travel significant distances" and bear "high travel costs." *Id.* at 15. But it's not entirely clear from this exactly which individuals Farstad is referring to, or where those individuals are located. Based on the lack of detail it is impossible to determine if witnesses would have to travel significant distances, or what those costs would be.

Farstad's motion does not specify the location of the witnesses, but only indicates it has offices in Minot, North Dakota, Fargo, North Dakota, and Billings, Montana. *ECF No. 4* at 6. Depending on the division within North Dakota the case is transferred to, witnesses may still have to travel a significant distance even if the case were transferred to North Dakota. Accordingly, this factor does not favor transfer.

### 4. **Ability of the Two Forums to Compel Non-Party Witnesses to Testify**

After considering the parties' arguments with respect to burdens on witnesses, the Court concludes that the availability of compulsory process to compel unwilling witnesses is not a significant issue here. Farstad has not identified any specific witness who would be unavailable and could not be compelled to attend trial. Accordingly, the Court finds that the factor weighs neither in favor of, nor against, the motion to transfer venue.

### 5. **Parties' Relative Contacts with the Forums**

The parties all have contacts with both forums based on the nature of the underlying action. Roedocker lives in Montana, and was employed in Montana. Farstad has its principle place of business in North Dakota, but has an office in Billings, Montana, and conducts work in this state. Both parties argue that Roedocker frequently sent documents to North Dakota, and was involved in teleconferences. *ECF No. 4* at 16–17; *ECF No. 9* at 15. It appears that transferring the action would merely shift the inconvenience from the Defendant to the Plaintiff, which is an impermissible basis for transferring the action. *Anderson*, 634 F.Supp. at 1204. This factor weighs against transferring

the action to North Dakota.

### 6. State Most Familiar with Governing Law

The action is based on Montana law and Montana is thus the most familiar with the governing law. Accordingly, this factor weighs strongly against transferring venue.

### 7. Relative Congestion in the Two Forums

The Court may consider the relevant congestion of the courts in North Dakota and Montana. Statistics compiled by the Administrative Office of the United States Courts reflect that for the 12-month period ending March 31, 2016, the weighted filings per judge in the District of North Dakota was 441, and the average time from filing to disposition was 11.3 months in civil cases. For that same 12-month period, in the District of Montana, weighted filings per judge totaled 414, and the average disposition time was 8.6 months. *See Admin. Office of the United States Courts, Federal Court Management Statistics (March 31, 2016)*; http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/03/31-1. Accordingly, this factor weighs against transferring the action.

### 8. Length of Time an Action has Been Pending

This action has only been pending for a short time, but the Court

concludes that this factor weighs neither in favor nor against the motion to transfer.

### 9. Ease of Access to Sources of Proof

Farstad does not make an argument specific to this factor.  But, as discussed above regarding the location of documents, this factor is a neutral consideration based on the nature of this case.

### 10. Whether There is a Local Interest in Either Forum

Farstad argues that North Dakota has an interest in protecting North Dakota employers and employees from inappropriate and derogatory text messages.  *ECF No. 4* at 18–19.  Roedocker argues that Montana has an interest in protecting its employees from violations of Montana law and in prohibiting violations of its laws.  *ECF No. 9* at 18. The Court finds that because both states may have an interest in enforcing the law, this factor weighs neither in favor nor against the motion to transfer.

### 11. Balancing the Factors

Based on the totality of the factors discussed above, the Court finds that they weigh against transferring the action to the District of North Dakota. As a result, the Court concludes that Farstad has not

met its burden of establishing that transfer of venue is appropriate and the Court recommends that Farstad's motion, to the extent it requests a transfer of venue, be denied.

## V.    **CONCLUSION**

IT IS RECOMMENDED that Farstad's motion (*ECF No. 3*) be GRANTED to the extent it seeks dismissal of Roedocker's claim under MCA § 39–2–904(1)(c), but DENIED in all other respects.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.  *See Local Rule 72.3.*

DATED this 21st day of June, 2016.

/s/ Carolyn S. Ostby
United States Magistrate Judge