IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RICHARD ROEDOCKER, <br><br> Plaintiff, <br><br> vs. <br><br> FARSTAD OIL, INC., <br><br> Defendants. | CV 16-29-BLG-SPW <br><br> ORDER |

Before the Court are United States Magistrate Judge Timothy Cavan's Findings and Recommendations, filed on January 19, 2017. (Doc. 49). In his Findings and Recommendations, Judge Cavan recommends that this Court deny Farstad's Motion for Summary Judgment. (Doc. 39).

Pursuant to 28 U.S.C. § 636(b)(1), the parties were required to file written objections within 14 days of the filing of Judge Cavan's Findings and Recommendations. No objections were filed. When neither party objects, this Court reviews Judge Cavan's conclusions for clear error. Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax,* 235 F.3d 422, 427 (9th Cir. 2000).

After reviewing the Findings and Recommendations, this Court adopts in part and rejects in part. The Court rejects the Findings and Recommendations to

1

the extent they determine that Farstad had a legitimate business reason to terminate Roedocker for his offensive text message. The Court otherwise adopts the Findings and Recommendations (FNRs).

I. Facts

Because the parties are familiar with the facts at issue as set out by Judge Cavan, this Court adopts the facts as set out by Judge Cavan, and reiterates only the ones necessary to its analysis below.

Farstad sells and distributes refined petroleum products on a wholesale basis. (Doc. 45 at ¶ 1). Farstad is headquartered in Minot, North Dakota, and has a branch in Billings, Montana. (*Id.* at ¶ 2). Farstad and its associated retail business, Superpumper, comprise SPF Energy. (*Id.* at ¶ 3). SPF was purchased by Parkland Fuel Corp. in January 2014. (*Id.* at ¶ 4). Merv Carter became the Director of Sales and Operations for Farstad following the acquisition. (*Id.* at ¶ 5).

Roedocker began working for Farstad in 1991. (*Id.* at ¶ 87). When Parkland acquired Farstad, Farstad had nine managers in addition to Carver – Bruce Hest, CFO, Kirby Mueller and Dan Dunstan, Lube Managers, Natalie Mussell, Human Resources Director, Roger Pelzer, Health, Safety and Environmental Manager, and four branch managers. (Doc. 43-1 at 23:1-24:7). Roedocker was the Billings branch manager and he reported directly to Carter following the acquisition. (*Id.* at ¶¶ 14-15).

2

On January 12, 2015, several managerial-level employees in various locations participated in a teleconference meeting. (Doc. 16 at ¶ 17). Relevant parties included Roedocker, Pelzer, and Minot Branch Manager Lori Thom. (Doc. 45 at ¶ 72). Roedocker asserts that Pelzer objected to certain issues Thom raised during the meeting so Pelzer sent Roedocker a text message referring to Thom and stating, "[w]hat's the f***ing b**ch doing?" (*Id.* at 72). Roedocker responded with a text to Pelzer and called Thom a "c**t." (*Id.*). According to both Roedocker and Pelzer, profanity is "common," and "rampant" at Farstad. (Doc. 43-9 at 25:3-10; Doc. 43-11 at 145:2-3). Shortly after the meeting, Pelzer told HR Director Mussell about Roedocker's text message. (*Id.* at 110). Mussell did not investigate the text. In fact, no action was taken on the text message until four months later. (Doc. 43-1 at 168:25-170:2). In February 2015, Carter evaluated Roedocker's performance and indicated Roedocker "meets expectations." (Doc. 43-2 at 80:10-13). The text message was not mentioned. (*Id.*).

Two months later, after another managers' meeting on April 28, 2015, Mussell initiated an investigation into Roedocker's text message to Pelzer. (Doc. 43-1 at 169:13-170:2; Doc. 45 at ¶ 31). While the exact date is unclear, Carter testified that Mussell informed him of the offensive text message from Roedocker in "kind of mid-May" of 2015, and the investigation was initiated soon thereafter. (Id. at ¶ 73; see also Doc. 43-1 at 168:25-170:2). Farstad has provided no

explanation for the four-month delay in taking action on the text message. Roedocker admitted during the investigation that he sent the text message, and Carter terminated Roedocker's employment from Farstad on May 21, 2015. (*Id.* at ¶¶ 73, 83).

The document memorializing Roedocker's termination discusses the various written corrective warnings Roedocker received, the issues surrounding his communication, and finally the text message he sent about Thom. (Doc. 43-15). The document concludes, "[d]ue to the seriousness of the remark from a leader of SPF Energy and overall poor communication, [Roedocker's] employment with SPF Energy is being terminated effective immediately." (Id. at 2). Carter testified that Roedocker was terminated for sending the text message. (Doc. 43-1 at 192:10-15).

Branch manager Eric Lawson testified that no one had been fired from Farstad for profanity during his fourteen years there. (Doc. 43-8 at 14:13-15). Pelzer was reprimanded for his participation in the text message. (Doc. 43-9 at 23:1-24). He was not fired. (*Id.*).

## II. Legal Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

4

law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007).

### III. Discussion

In his FNRs, Judge Cavan determined that Roedocker's offensive text message provided Farstad with a legitimate business reason, and thus good cause, to fire Roedocker. (Doc. 49 at 14). This Court respectfully disagrees.

Montana's Wrongful Discharge from Employment Act states:

(1) A discharge is wrongful only if:

> (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;

5

>(b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
>
>(c) the employer violated the express provisions of its own written personnel policy.

Mont. Code Ann. § 39-2-904. "Good cause" is defined as "reasonable job-related grounds for dismissal" based on either: (1) "failure to satisfactorily perform job duties"; (2) "disruption of the employer's operation"; or some other (3) "legitimate business reason." Mont. Code Ann. § 39-2-903(5).

A "legitimate business reason" is one that "is neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Becker v. Rosebud Operating Services, Inc.*, 191 P.3d 435, (Mont .2008) (*quoting Kestell v. Heritage Health Care Corp.*, 858 P.2d 3, 7 (Mont. 1993)). The balance between the employer's discretion and "the employee's equally legitimate right to secure employment ... should favor an employee who presents evidence, and not mere speculation or denial, upon which a jury could determine that the reasons given for his termination were false, arbitrary or capricious, and unrelated to the needs of the business." *Kestell*, 858 P.2d at 8.

"To defeat a motion for summary judgment on the issue of good cause, the employee may either prove that the given reason for the discharge is not 'good cause' in and of itself, or that the given reason 'is a pretext and not the honest reason for the discharge.'" *Becker*, 191 P.3d at 441 (*quoting Johnson v. Costco*

6

*Wholesale*, 152 P.3d 727, 734 (Mont. 2007). In determining whether a factual issue exists, "[a]ll reasonable inferences which can be drawn from the evidence presented must be drawn in favor of the nonmoving party." *Vettel-Becker v. Deaconess Medical Center of Billings, Inc.*, 177 P.3d 1034, 1039 (Mont. 2008).

Farstad asserts that it fired Roedocker for the text message he sent to Pelzer, which violated Farstad's code of conduct. (Doc. 40 at 5; Doc.43-1 at 192:10-15). In particular, Farstad claims that "[t]here is no dispute [Roedocker] sent his offensive text message, contrary to the expectations Farstad reasonably placed on management employees, in violation of general Company policies, and in violation of specific warnings [Roedocker] had received about his workplace communications." (Doc. 40 at 5-7). And, as Judge Cavan pointed out, Farstad characterized Roedocker's text message about Thom as "so outrageous and offensive that Farstad could no longer employ him." (*Id.* at 6).

On its face, Farstad's reason for terminating Roedocker's employment seems to qualify as good cause. The undisputed evidence establishes that Roedocker was a branch manager who sent a text message where he called another branch manager a "c\*\*t." (Doc. 43-9 at 15:11-17). At first glance, these undisputed facts seem to provide good cause for discharge from employment, thereby defeating Roedocker's wrongful discharge claim. *See Davis v. State Dep't of Pub. Health and Human Sevs.* 357 P.3d 320, 322 (Mont. 2015) (holding that a

wrongful discharge claim cannot survive when there are facts *not* in dispute that provide 'good cause' for discharge from employment). But considering whether the text provided Farstad with a "legitimate business reason," and thus good cause, for Roedocker's termination requires the Court to consider more than just the text itself. *See Samper v. Providence St. Vincent Medical Center*, 675 F.3d 1233, 1236 n. 1 (9th Cir. 2012) (The Court must, of course, consider the record as a whole).

For example, it is undisputed that Roedocker's text message was precipitated by an offensive text he had received from Pelzer. According to Roedocker, Pelzer first texted him, and called Thom a "f***ing b**ch." (Doc. 43-11 at 45:16-25). Although Pelzer did not specifically recall whether he called Thom a "f***ing b**tch," he did recall "being angry" and "voicing it," and possibly asking "what the f**k" she was doing. (Doc. 43-9 at 15:18-25; 17:5-8). It is also undisputed that Pelzer, like Roedocker, was a manager at Farstad. (Doc. 43-1 at 23:1-24:7). But, despite admittedly using profanity, and calling Thom an equally vulgar name as Roedocker had, Pelzer was not fired. (Doc. 43-9 at 23:1-24).

On top of that, according to Pelzer and Roedocker's undisputed testimony, profanity was "common" and "rampant" at Farstad. (Doc. 43-9 at 25:3-10; Doc. 43-11 at 145:2-3). To that end, another Farstad manager testified that in his fourteen years' experience he was not aware of any employee ever being terminated for using derogatory language. (Doc. 43-8 at 14:13-15). Finally,

8

although Pelzer told HR Director Mussell that Roedocker had called Thom a "c**t," neither Mussell, nor anyone else at Farstad, investigated or looked into Roedocker's conduct for four months. (*Id.* at 19:16-25; 20:3-5). In fact, in an intervening review, Carter found that Roedecker was "meeting expectations," with no mention of the text message whatsoever. (Doc. 43-2 at 80:10-13).

A jury considering these facts could find that Farstad arbitrarily applied the code of conduct to Roedocker when it terminated him and not Pelzer for the text messages and when it decided to terminate him four months after the event. Viewing the evidence in Roedocker's favor, the Court finds that Roedocker has pointed to sufficient evidence to raise a genuine issue of material fact as to whether Farstad possessed a "legitimate business reason," and thus had good cause, to terminate Roedocker.

Accordingly, IT IS HEREBY ORDERED:

1. Judge Cavan's Findings and Recommendations (Doc. 49) are ADOPTED IN PART and REJECTED IN PART, consistent with this Order.

2. IT IS ORDERED that Farstad's Motion for Summary Judgment (Doc. 39) is DENIED in its entirety.

DATED this 5th day of March 2018.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge